FAULKNER, Justice.
This is an appeal by Dixieland Waste Systems, Inc., from the trial court’s order denying its petition for writ of mandamus. We reverse.
The facts, as stipulated to, are as follows:
*422 On December 12, 1984, Dixieland applied to the City of Bessemer for a franchise to permit it to pick up garbage from businesses within the City. A City ordinance regulating the issuance of such franchises was in effect at the time of Dixieland’s application.[1] Dixieland complied with all of the requirements contained in the ordinance.
Four licensees now operating in Bessemer were operating at the time Dixieland filed its application. Those licensees in existence are Moore Coal Co., Inc., which has about 225 customers, Browning-Ferris Industries of Alabama, Inc., which has 49 customers, Waste Away of Birmingham Inc., which has 10 customers, and Larry Corely, d/b/a Household Sanitation, who has 14 customers.
The City’s records reflect that Browning-Ferris Industries of Alabama, Inc., and Moore Coal Co., Inc., were issued licenses on June 30, 1971, and July 1, 1971, respectively. The records also reflect that certificates of insurance and lists of equipment were on file at the time the licenses were issued to those companies. The records do not indicate that franchises were granted to either of these companies as required by the City Ordinance. Although no franchises were granted, Browning-Ferris Industries of Alabama, Inc., and Moore Coal, Inc., were granted licenses and have been in operation since 1971. The minutes of the City Commission do not reflect any action taken by the City Commission in regard to franchises for either of the two companies until a resolution granting them franchises was passed by the City Commissioners on February 26, 1985. These franchises were granted while Dixieland’s application for a franchise was pending and while its petition for writ of mandamus was pending in the circuit court.
Two other applications for franchises were filed after Dixieland’s, on December 18, 1984, and January 15, 1985. Although these two applications, like Dixieland’s, were not immediately denied, the City determined that no applications would be granted in excess of the four businesses then operating and that any license fees paid by an applicant whose application was denied would be refunded.
A Bessemer City Commissioner testified that the commissioners determined that it was in the best interest of the people of Bessemer that no more than four franchises be granted and that any further franchises would lead to inefficiency in the handling of garbage and would cause undue hardship in the enforcement of the applicable garbage laws and regulations allowed to the municipalities by the general laws of the State of Alabama.
The principal stockholder of Dixieland contacted nineteen potential customers who were not being served by the present franchise holders. He stated that there is adequate business within the city limits of *423 Bessemer to make it economically feasible for Dixieland to do business within the city limits and that Dixieland is prepared to provide service to the nineteen potential customers.
One of Dixieland’s contentions is that under the existing ordinance the City did not have the discretion to deny Dixieland’s application. Dixieland does not dispute the validity of the ordinance.
The City argues that under the police powers granted to a municipality to protect and preserve the interests of its citizens, it may use discretion in determining whether to grant or deny a franchise, as long as it does not act arbitrarily or capriciously, and the City argues that it has not done so in this case.
The City is given the power to regulate the disposal of garbage, by the Code of Alabama (1975), § 11-47-135, which reads as follows:
“All cities and towns of this state shall have the power to establish and maintain incinerators for the destruction of garbage and like substances or to otherwise dispose of garbage, either within or without the city limits, and to haul or cause to be hauled to such incinerators or other places of disposal trash and garbage of all kinds and cause the destruction of the same in such manner as may be deemed expedient by the proper municipal authorities and to fix and collect such reasonable fees as may be necessary to carry out the provisions of this section.”
The City has exercised this power by adopting Article 15, § 7-135 through § 7-139, of the Bessemer Municipal Code.
Smith v. City of Mobile, 374 So.2d 305, 307 (Ala.1979), this Court held: “Once a planning commission has properly exercised its authority in drafting ordinances regulating subdivision development, it is bound by those ordinances.” Although Smith v. City of Mobile deals with the regulation of subdivision development, it is analogous to the present case in that the authority of the municipality to exercise control over subdivision of land is derived from the legislature, just as the authority of the municipality to regulate garbage disposal is derived from the legislature. Smith v. City of Mobile, supra; Ala.Code (1975), § 11-52-31; Ala.Code (1975), § 11-47-135.
The planning commission in Smith was held to be bound by any limitations on its authority contained in the legislation authorizing it to act, as well as by any restrictions contained in its own regulations. The same holding applies to the Bessemer City Commission in its regulation of garbage disposal. The City adopted an ordinance to provide franchises to those applicants that met the stated requirements, which are furnishing the City with a list of equipment, agreeing to abide by the regulations, obtaining liability insurance, and paying a license fee. Dixieland’s application met the stated requirements, but the City decided not to grant any further applications for franchises, citing its police powers as authority for this decision. This decision was not in conformance with its regulations set out in Article 15, § 7-135 through § 7-139.
' The City does have the authority to adopt ordinances and resolutions to discharge the powers conferred upon it and to carry out its police powers. Ala.Code (1975), § 11-45-1. However, there is no evidence in the record that the City adopted an ordinance or resolution stating its decision not to grant any further franchises for garbage removal.
Regulations enacted by municipalities must be of general application and state standards sufficient to give, applicants notice of what is required of them. Longshore v. City of Montgomery, 22 Ala.App. 620, 119 So. 599 (1928). Since the City did not change the regulations by adopting a new ordinance or resolution, the City is bound by its expressed regulations as set forth in Article 15, § 7-135 through § 7-139.
The judgment of the trial court is reversed, and the cause is remanded for the issuance of a writ of mandamus directing *424 the City Commission to grant Dixieland Waste Systems, Inc., a franchise.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, AL-MON and BEATTY, JJ., concur.

. The Bessemer Municipal Code, Art. 15, § 7-135 through § 7-139, reads as follows:
"Sec. 7-135. Franchise required.
"Any person operating a garbage pickup or trash removal service and operating on the streets and alleys of the City shall obtain a franchise from the Boárd of Commissioners pri- or to the commencement of business.
"Sec. 7-136. Information required.
"(a) In order to obtain the franchise the person applying shall furnish to the Board of Commissioners:
“(1) A list of the equipment it proposes to use in such service sufficient to perform the necessary services, which shall be a containerized system.
“(2) The franchisee shall agree to abide by all of the rules and regulations promulgated by the Street Department in the operation of its garbage disposal facility.
"Sec. 7-137. Liability insurance required.
“The applicant for a franchise shall obtain and furnish to the City liability insurance insuring itself from any claims arising from the operation of its trucks or vehicles or from the incidental operation of its business, in an amount of not less than Fifty Thousand Dollars ($50,-000.00) to any one (1) person or One Hundred Thousand Dollars ($100,000.00) arising out of any one (1) accident.
"Sec. 7-138. Franchise fee.
“In order to obtain a franchise the applicant shall pay the sum of Two Hundred and Fifty Dollars ($250.00) prior to going into business.
“Sec. 7.139. Franchise; not exclusive.
“The City shall not grant any exclusive franchise in the operation of the business described in Section 7-135.”